**Charles Frank GRIFFIN, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Aug. 18, 1980.

Rehearing Denied Sept. 29, 1980.

John R. Seymour, Chattanooga, for petitioner.

Michael J. Passino, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for respondent.

## OPINION

BROCK, Chief Justice.

The petitioner was convicted of the offense of armed robbery and sentenced to life imprisonment and his conviction was affirmed on appeal. We granted certiorari review to consider the petitioner's contention (1) that his arrest and the search and seizure of evidence incident thereto violated his constitutional rights and rendered the evidence thus obtained inadmissible and (2) his contention that an alleged confession made by him was involuntary and should not have been admitted into evidence.

On March 1, 1977, a truck stop in Chattanooga was robbed at about 9:30 a. m. Eyewitnesses described the robbers as "three tall black males, one of them extremely tall and wearing a black leather jacket." The robbers were armed with a pistol and a sawed–off shotgun and made their getaway in "a 1963 or 1964 blue Buick or Oldsmobile." About $2,000 cash and some checks were taken in the robbery. This information was related to investigating police officers, one of whom was detective Newson of the Chattanooga Police Department.

Approximately 1½ to 2 hours after the robbery, detective Newson was standing near his patrol car in a parking lot near a street fourteen blocks from the scene of the robbery when he saw a red Ford Pinto pass by on the street. It was driven by an unidentified woman and the defendant was sitting in the right front passenger seat. At the time, Newson was standing about 15 feet away from the passing car. Newson recognized the defendant who was Newson's cousin and was known to detective Newson as a heroin addict with an extensive criminal record. Newson also knew that the defendant was quite tall, 6 feet 4 inches. As the Pinto passed by, detective Newson observed:

"Well, I saw Mr. Griffin in the car, and evidentally he spotted me. And when he spotted me he scooted down in the car and bent over like this."

On cross–examination detective Newson further explained:

"A. When a man—you see a man and the man spots you, just right off hand looks over and spots you and ducks down in the seat and bent over, and you are a policeman, something gotta be wrong.

"Q. Why? Couldn't he have been reaching down under the seat for anything? A pack of chewing gum, or any innocent purpose?

"A. He didn't look like that. It was just—the look in his eyes, it was a look of surprise, and he ducked down and he went up under the seat.

*  *  *  *  *  *

"Q. Mr. Newson, isn't it fair to say that you suspected at that time that Mr. Griffin might be involved in the robbery?

"A. At the time I saw him when he ducked down?

"Q. Yes, sir.

"A. Yes, sir."

Detective Newson's suspicions were sufficiently aroused that he immediately radioed for two other officers, Mosley and Cook, who were stationed about a half block down the street, and directed them to stop the Pinto. All three of the officers converged on the car, forced the defendant out of the car and placed him against the car in a "frisk position" for a pat down search. As this was being done, Newson directed officer Mosley to check under the front seat on the passenger's side. He testified that he gave this instruction "to see if he (defendant) had stuck anything up under there" when he bent down. He said he wanted to "make sure he didn't have anything." Mosley's search under the right hand front seat resulted in the discovery of approximately $700 in cash. At this point, the defendant was placed under formal arrest and warned of his rights in compliance with the *Miranda* decision. After the formal arrest was consummated, the officers found a black leather jacket in the back seat of the Pinto, apparently in plain view.

The defendant contends that this warrantless arrest and search were without probable cause and in violation of his constitutional rights. Specifically, defendant contends that his arrest preceded the search and seizure of the money and the black leather jacket and that the facts known to the officers, without those two items, were insufficient to constitute probable cause.

We are satisfied from a review of the record that the arrest and search were lawful and that the evidence thus obtained was admissible.

I

We hold that the officers were justified in stopping the automobile in which the

defendant was riding as a passenger and in ordering him to get out of the car and in placing him against the car in the "frisk position" for a pat down search. *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry*, the court said:

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 88 S. Ct. at (1881).

We acknowledge that the rule announced in *Terry v. State of Ohio, supra*, has been limited and explained in later decisions of the United States Supreme Court. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In *Dunaway* the court said:

"[Terry] involved a brief, on–the–spot stop on the street and a frisk for weapons, a situation that did not fit comfortably within the traditional concept of an 'arrest.'

   *    *    *    *    *    *

" . . . the court established 'a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.' " 99 S.Ct. at 2254–55.

It was held in *Dunaway* that the *Terry* doctrine does not authorize the taking of a person into custody and to the police station for interrogation, so called "custodial questioning."

In *Brown v. Texas, supra*, the court stated:

"We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. (Citations omitted.) However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. (Citations omitted.)" 99 S.Ct. at 2641.

Applying the foregoing principles to the facts of the instant case, we conclude that officer Newson had ample justification for making the initial investigatory stop of the car in which the defendant was riding and in ordering him to get out of the car and place himself in the "frisk position" against the automobile. We reach that conclusion because of these factors:

(1) Defendant generally fit the description of one of the robbers, i. e., a "very tall" black male;

(2) The stop was reasonably close to the robbery, both in time and space;

(3) When spotted, the defendant looked surprised, "scooted down and bent over" in a suspicious manner;

(4) Officer Newson knew the defendant was a heroin addict and had a criminal record and very likely was armed.

Although these factors were insufficient to constitute the probable cause necessary for a full arrest, they did constitute grounds for "a reasonable suspicion, based on objective facts, that the individual [was] involved in criminal activity." *Brown v. Texas, supra*.

■ The next question is whether the officers were justified in searching under the passenger's side of the front seat of the automobile from which the defendant was removed, a search which revealed the incriminating $700. In our opinion, this limited search was justified upon two grounds. The same societal interest which justifies the pat down search of the defendant's person, that is, the interest in protecting the officer from violent action on the part of the suspect, also justifies the limited search under the seat in the instant case.

*See,* quotation from *Terry v. State of Ohio, supra; Williams v. State,* 19 Md.App. 204, 310 A.2d 593 (1973); *People v. Watkins,* 23 Ill.App.3d 1054, 320 N.E.2d 59 (1974); *Wood v. State,* Tex.Cr.App., 515 S.W.2d 300 (1974); *Stevens v. State,* Fla.App., 354 So.2d 110 (1978); *Comm. v. Almeida,* 373 Mass. 266, 366 N.E.2d 756 (1977). *See also, Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Of particular relevance on this point is the knowledge of the officers that the defendant was suspected of committing an armed robbery, that the defendant had a criminal record, and just prior to being stopped, the defendant, upon discovery that his cousin, officer Newson, was observing him, scooted down toward the floor in the direction of the area beneath the seat.

■ Additionally, the defendant is without standing to contest the limited search under the seat of the automobile in this case because he claimed no ownership of the automobile or of the money discovered by the search. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 59 L.Ed.2d 387 (1978).

In the *Rakas* case, *supra,* the court considered a fact situation quite similar to the one in the instant case. A police officer on patrol received a radio report of an armed robbery. The report described the getaway car and shortly thereafter the officer spotted what he thought might be that car. The officer followed the car and, after the arrival of assistance, stopped it. The occupants, the two male defendants and two female companions, were ordered out of the car and the interior of the vehicle was searched. A box of rifle shells and a sawed–off rifle were found in the glove compartment and under the front passenger seat, respectively. The court expressly rejected the "target" theory of standing in such cases, that is, that any criminal defendant at whom a search was directed could challenge the validity of the search. The court then proceeded to determine whether the disputed search and seizure infringed upon any interest of the petitioner which the Fourth Amendment was designed to protect. The court restricted the standing doctrine announced in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) that "anyone legitimately on the premises where a search occurs may challenge its legality," and announced that the *Jones* doctrine "cannot be taken in its full sweep beyond the facts of that case." Instead the court stated that *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) should be looked to for guidance in defining scope of an interest alleged to be protected by the Fourth Amendment. Applying the *Katz* standard, the court concluded that the defendants had no "legitimate expectation of privacy" in the glove compartment and the area under the front seat of the automobile since they failed to claim any ownership of the vehicle that in fact was owned by the female driver. Said the court:

"A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. [Citing *Alderman v. U.S.,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).]" 99 S.Ct. at 425.

## II

■ The defendant's claim that his confession was involuntary is without merit. His claim is that the confession was induced by promises of detective Kennedy and an Assistant District Attorney General that, if he confessed, his punishment would consist of incarceration for five years in a medical facility for treatment of his drug addiction. The officer and the Assistant District Attorney testified in this regard and denied that any such promises were made to the defendant and their testimony was accredited by the trial judge who concluded that the confession was voluntary.

The record does show that the defendant expressed considerable interest in seeking medical assistance to cure him of his drug addiction and that he, not the officer or the Assistant District Attorney, was the moving force in discussing this matter. The record adequately supports the conclusion

that the trial judge, however, that no promises were made to the defendant. In short, the evidence does not preponderate against the finding of the trial court that the confession was voluntary. Thus, the issue is not available to the defendant on appeal. *State v. Chandler*, Tenn., 547 S.W.2d 918, 922–23 (1977).

The defendant has alleged other errors, some of which are based upon the theory that his arrest was invalid; still other errors are alleged. We have examined all of these claims and found them to be without merit.

The judgment of the lower courts is affirmed and costs are taxed against the defendant.

FONES, COOPER and HARBISON, JJ., and HUMPHREYS, Special Justice concur.