**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MAY 1999 SESSION**

FILED

**July 22, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9811-CC-00342** |
| Appellee, | ) | |
| | ) | **McNAIRY COUNTY** |
| VS. | ) | |
| | ) | **HON. JON KERRY BLACKWOOD,** |
| **WANDA JOYCE SMITH,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Driving Under the Influence) |

FOR THE APPELLANT:          FOR THE APPELLEE:

**ANGELA R. SCOTT**
P.O. Box 408
Henderson, TN 38340

**PAUL G. SUMMERS**
Attorney General & Reporter

**J. ROSS DYER**
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN 37243-0493

**ELIZABETH T. RICE**
District Attorney General

**ED NEAL McDANIEL**
-and-
**JERRY NORWOOD**
Asst. District Attomeys General
302 Market St.
Somerville, TN 38068

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

**O P I N I O N**

A jury found the defendant guilty of driving under the influence (DUI). The defendant filed a motion for new trial, which was denied. She now appeals, arguing that the trial court erred in denying her motion to suppress because the arresting officer stopped her vehicle with neither probable cause nor reasonable suspicion. She also argues that the trial court abused its discretion by admitting into evidence her blood alcohol test results because the State failed to establish chain of custody and exclude the possibility of tampering. Finding no merit in these arguments, we affirm.

The evidence shows as follows. At the motion to suppress hearing and at trial, Trooper Jimmy Lambert testified that on the evening of September 28, 1997, he parked his patrol car on the side of the road to run stationary radar. A civilian vehicle stopped, and the driver complained that a red Ford Ranger was driving recklessly. He then observed a red Ford Ranger pass, and he pulled onto the road to investigate. According to Trooper Lambert, the red Ford Ranger was moving slowly, approximately fifteen miles per hour under the forty-five miles per hour speed limit. When he observed the Ranger cross the yellow center line and then cross the white fog line, he decided to initiate a stop. He activated his lights, but the Ranger did not stop. After following the Ranger for approximately three-quarters of a mile, Trooper Lambert activated his siren. The Ranger traveled an additional one-half mile before it stopped.

Trooper Lambert identified the defendant as the driver of the Ranger. According to Trooper Lambert, the defendant smelled strongly of an intoxicated beverage and her eyes were watery and red. When asked if she had been drinking, the defendant admitted, "A little bit." Trooper Lambert asked the defendant to exit the vehicle, and when she did, she staggered and had difficulty walking. When the defendant could not perform

any roadside sobriety tests, Trooper Lambert arrested her for DUI. Trooper Lambert testified that in his opinion, the defendant was intoxicated.

Trooper Lambert asked the defendant to submit to a blood alcohol test, and the defendant agreed. He transported the defendant to the emergency room of a local hospital to have her blood drawn. He testified that after the sample was drawn, it was given to him and he immediately sealed it and mailed it by U.S. postal mail to the Tennessee Bureau of Investigation (TBI) crime lab in Jackson.

TBI Special Agent Robert Marshall testified he conducted the blood alcohol test in this case, which yielded a result of .22 grams per cent of ethyl alcohol. He testified that when blood samples arrive at the laboratory, they are assigned an identification number and placed in a secure refrigerator. According to Agent Marshall, when he retrieved the blood sample kit in this case from the secure, locked refrigerator, it was sealed with tamper-resistant tape. The vial was labeled with the assigned identification number, the defendant's name, the time and date of collection, and two sets of initials. The paperwork accompanying the vial mirrored much of this information, indicating that the sample was collected by Jane Goodman, M.T.,[1] on September 28, 1997, in McNairy County and sent to the laboratory by Trooper Lambert. The paperwork contained no information regarding whether Ms. Goodman was licensed or trained to collect blood samples or the procedure she used to collect the sample in this case. Agent Marshall also testified he did not receive a submission form signed by the defendant indicating that the blood was hers; according to Agent Marshall, it is the trooper's responsibility to complete such paperwork. Agent Marshall acknowledged that wiping alcohol across the area from where blood is to be drawn might compromise the integrity of the blood sample

---

[1]"M.T." is a common abbreviation for a medical technologist, a member of the medical profession who generally performs laboratory tests, often under the supervision of laboratory managers and pathologists. The Barnhart Abbreviations Dictionary 169 (Robert K. Barnhart ed., John Wiley & Sons, Inc. 1995); Careers in Focus: Medical Technicians 102-03 (Ferguson Publ'g Co. 1998).

and the test results, for which reason non-alcohol swabs are generally recommended.

The defendant testified that before her blood was drawn at the hospital, her arm was swabbed with a white patch that smelled of alcohol. She also admitted that in the hours preceding her arrest, she was at a bar where she consumed at least six beers and "ate part of a bag of chips."

The defendant first argues that the trial court erred in denying her motion to suppress because Trooper Lambert had neither probable cause nor reasonable suspicion to stop her vehicle. She complains that she posed no threat of violence and that Trooper Lambert based his stop upon an anonymous tip of reckless driving, a misdemeanor, without information regarding the credibility of the informant or the basis of the informant's knowledge. She also complains that the stop violated T.C.A. § 40-7-103, which she claims prohibits stops based solely upon anonymous tips of minor traffic violations, because Trooper Lambert had no independent basis for stopping her vehicle.

In support of her argument, the defendant relies solely upon the uniform citation completed by Trooper Lambert, which states the defendant "was stopped after a complaint of reckless driving" and does not mention any other basis for the stop. Trooper Lambert testified at the suppression hearing, however, that the defendant was traveling between thirty and thirty-five miles per hour in a forty-five mile per hour zone, which gave him "reason for concern." He also testified at trial it was only after he observed the defendant's vehicle traveling slowly and crossing the yellow center line and white fog line that he decided to initiate the stop. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998)(holding that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial"). Thus, contrary to the defendant's contentions, these

4

personal observations provided Trooper Lambert with grounds independent from the anonymous tip upon which to form reasonable suspicion to justify an investigatory stop of the defendant's vehicle. See State v. Carl Seaward Allen, No. 01C01-9707-CC-00272, Robertson County (Tenn. Crim. App. filed August 7, 1998, at Nashville)(finding reasonable suspicion where an officer observed the defendant driver crossing the fog line at least twice while driving a van with Texas license plates around midnight); see also Terry v. Ohio, 392 U.S. 1, 21 (1968) (holding that an investigatory stop of a motor vehicle is justified when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed); Griffin v. State, 604 S.W.2d 40, 42 (Tenn. 1980)(same). Thus, the defendant's contentions lack merit.

The defendant also argues that the trial court abused its discretion in allowing the results of the blood alcohol test into evidence. The defendant complains the State failed to provide proof verifying the identification of Ms. Goodman, the individual who drew her blood, and the procedure she used. She suggests that chain of custody cannot be established because Agent Marshall did not receive a form signed by the defendant acknowledging that the blood sample was hers, and she claims that the State failed to prove the blood sample arrived at the TBI laboratory in an unaltered state.

The decision to admit or exclude the result of a blood alcohol test lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. See State v. Jim Smith, No. 03C01-9312-CR-00398, Knox County (Tenn. Crim. App. filed July 11, 1994, at Knoxville); see also State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). We agree that chain of custody would have been better proven by a witness's testimony that the blood sample taken from the defendant in the hospital was the same blood sample packaged by Trooper Lambert. Even so, any error in admitting the blood alcohol

test results in this case was harmless beyond a reasonable doubt because the record contains other competent evidence, including the defendant's own admissions at trial, sufficient to sustain the jury's determination that the defendant was driving while under the influence. Tenn. R. Crim. P. 52(a); <u>see</u> <u>State v. Stowers</u>, 649 S.W.2d 607, 609 (Tenn. Crim. App. 1983).

Finding no merit to the defendant's arguments, the trial court's judgment is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:


_____
JOE G. RILEY, Judge


_____
THOMAS T. WOODALL, Judge