IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2000 Session

## STATE OF TENNESSEE v. SELINA G. HARRELSON

**Appeal from the Circuit Court for Hardin County**
**No. 7749      C. Creed McGinley, Judge**

---

**No. W1999-00521-CCA-R3-CD - Decided July 28, 2000**

---

The defendant, Selina G. Harrelson, was convicted of possession of one-half gram or more of cocaine with intent to sell. She contends that the officer did not have probable cause to search the truck with the drug detection dog; that the evidence is insufficient to show that she possessed crack cocaine; and that the trial court should have imposed a sentence alternative to incarceration. We hold that the defendant lacked a reasonable expectation of privacy in the truck to contest the search and that, in any event, the officer had probable cause. We hold that the evidence is sufficient to support the conviction and that the trial court properly sentenced the defendant to incarceration. We affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLEN, JJ., joined.

Stephanie L. Prentis, Savannah, Tennessee, attorney for appellant, Selina G. Harrelson.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Selina G. Harrelson, appeals as of right her conviction by a Hardin County jury for possession of one-half gram or more of cocaine with intent to sell, a Class B felony. The trial court sentenced her as a Range I, standard offender to nine years to be served in the Department of Correction. The defendant contends that the officer did not have probable cause to search the truck in which he found the drugs; that the evidence is insufficient to show that she actually, jointly, or constructively possessed crack cocaine; and that the trial court should have imposed a sentence alternative to incarceration.

A Hardin County deputy stopped a truck driven by Freddie Cunningham. After his drug detection dog alerted on the truck and he discovered crack cocaine on the seat, the deputy arrested Cunningham and the defendant, who was a passenger in the truck. The defendant filed a motion to suppress the crack cocaine arguing that the officer lacked probable cause to conduct the warrantless search of the truck.

At the suppression hearing, Shane Fisher testified that in August 1998, he was a deputy with the Hardin County Sheriff's Department and that he worked with a trained and certified drug detection dog. He said that on August 9th, he was on patrol when he encountered a pickup truck in a curve driving on his side of the road. He said that he had to drive off the road to avoid being hit. He admitted that the road was narrow but said that cars could still pass each other on the road. He said that the road's center-line was unmarked. He said that looking in his rearview mirror, he noticed that one of the truck's taillights was unlit. He stated that he turned around, activated his blue lights, and stopped the truck. He stated that although it was fairly dark that night, there was a street light seventy-five to one hundred yards from where he stopped the truck.

Mr. Fisher testified that Freddie Cunningham was driving and that the defendant was a passenger in the truck. He said that did not see or smell any drugs or alcohol when he approached the truck. He said that he asked Mr. Cunningham to leave the truck. He said that he asked Mr. Cunningham if there was anything illegal in the truck and that Mr. Cunningham replied there was not. Mr. Fisher said that he explained to Mr. Cunningham that he was going to circle the truck with his drug detection dog. He said that the dog alerted on the driver's door. He said that he put the dog back in his car and searched the truck. He said that when he opened the driver's door, he saw a pill bottle lying on the middle of the seat. He said that the bottle contained crack cocaine, and he arrested Mr. Cunningham and the defendant for possession of a Schedule II substance for resell. The trial court overruled the motion to suppress.

Mr. Fisher testified to substantially the same account of events at trial. He said that when he first approached the truck and asked for Mr. Cunningham's driver license, both occupants seemed nervous in that they were fidgeting and breathing deeply. He said that the defendant was alone in the truck for one minute while he took Mr. Cunningham to the back of the truck. He said that both Mr. Cunningham and the defendant were outside the truck when he investigated it with the drug detection dog. He said that the pill bottle had no label and was leaning against a purse with a water bottle and a few other items on the seat. He said that when he opened the pill bottle, he found forty rocks of crack cocaine. He stated that a single rock generally sold for twenty dollars in that area, making the crack cocaine in the bottle worth eight hundred dollars. He said that he asked Mr. Cunningham and the defendant if the bottle contained crack and to whom it belonged, but they did not answer. On cross-examination, he admitted that he wrote in his police report that Mr. Cunningham had nodded his head when asked if he knew what was in the pill bottle.

Agent Kaye Sherriff, a forensic scientist specializing in drug identification, testified that she identified the substance in the pill bottle as 5.8 grams of crack cocaine. Diane Polk, the circuit court clerk, testified that on November 30, 1998, the defendant failed to appear for her arraignment in this case and that the court issued a capias for her arrest.

Andrea Davidson testified that on April 2, 1999, she worked for the Hardin County Sheriff's Department. She said that she was on routine patrol when she recognized the driver of an approaching vehicle as Freddie Cunningham. She said that she thought Mr. Cunningham's female passenger was the defendant, for whom she was looking because of a capias. She said that she stopped the vehicle and told the female passenger that she believed her to be the defendant. She said that the woman denied that she was the defendant, gave another name, and said that she was from Memphis. Ms. Davidson said that when she asked Mr. Cunningham if the woman was the defendant, he replied that he had nothing to say. She said that she asked the woman for identification, but the woman said she did not have any. She said the woman told her that she had injured her jaw and that Mr. Cunningham was taking her to a dentist. She said that the woman claimed to be in pain and to have taken pain medication but that the woman seemed clear and alert.

Ms. Davidson testified that although she thought that the woman was the defendant, the defendant had changed her appearance. She said that she told them that they would have to wait while another officer brought a jail intake card bearing the defendant's picture in order for her to identify the woman. She said that at that point, the woman admitted to being the defendant. Ms. Davidson said that during the course of these events, she learned that the defendant was living with Mr. Cunningham.

The defendant testified that on the night of her arrest, she had a room at the Savannah Motel. She said that she bought some cigarettes and was walking back to the motel when Freddie Cunningham stopped and asked if she needed a ride. She said that she accepted the ride because she decided to return to a friend's house where she had washed clothes earlier that day and had left laundry in the washing machine. She said they were near her friend's house when an officer stopped Mr. Cunningham. She said that the officer came to her side of the truck and asked Mr. Cunningham for his identification and the truck's registration. She said that Mr. Cunningham opened the glove box and began searching through papers with a flashlight. She said that the officer told Mr. Cunningham that he would call to check the registration instead.

The defendant testified that the officer returned to Mr. Cunningham's side of the truck and asked him to get out. She said that the officer and Mr. Cunningham went to the back of the truck and that a neighbor approached and spoke with the officer. She said that the officer asked her to get out of the truck. He explained that he was going to bring the drug detection dog to the truck and that if it alerted, he would have to search the truck. She said that the officer led the dog to the driver's side, where the dog went crazy. She said that the dog did not sniff the passenger's side of the truck. She said that the officer reached through the open door of the truck and then returned the dog to his car. She said that the officer showed them a pill bottle and asked if they knew what it was. She said that she told the officer that she didn't know anything about it, but Mr. Cunningham nodded and said that it was his. She said that, evidently, the officer had forgotten that they responded in this way.

The defendant testified that Mr. Cunningham removed everything from the glove box and laid it on the seat while searching for the registration. She said that her purse was next to her on the seat. She said that the seat was covered with papers and that she did not see a pill bottle on the seat. She said that she was alone in the truck for three or four minutes. She testified that she did not know

-3-

that the drugs were in the truck that night. She said that if she had known they were there, she would have thrown them out the window when she had the chance. She admitted that she had been addicted to drugs for several years. She said that she had lost everything because of her addiction. She agreed that forty rocks was a lot of crack cocaine but denied ever selling drugs. She said that in order to get drugs, she would go to a crack house and smoke with people she knew. She stated that she also had a little money from babysitting.

The defendant testified that she probably had been drinking before she was arrested. She said that she was always nervous when stopped by the police but that she did not remember being noticeably nervous that night. She said that she did not appear for her arraignment because she was drunk and on drugs that day. She said that she was also drunk and on drugs the day she was stopped by Officer Davidson. She said that she gave Officer Davidson a false name because she did not want to go to jail. She said that all she thought about at that time was "partying." She denied living with Mr. Cunningham.

Freddie Cunningham testified that he gave the defendant a ride on the night in question. He said an officer stopped him for having a taillight out and that the officer asked him to step to the back of the truck. He said that the defendant was alone in the truck for a while because a drunk person appeared and began talking with the officer. He said that the drugs on the seat were his and that the defendant did not know they were in the truck. He denied supplying the defendant with drugs or money to buy drugs.

Mr. Cunningham testified that he pled guilty to felonious possession of the cocaine found in his truck. He said that he only vaguely remembered the judge asking him if he were guilty of possessing the drugs because he was under a lot of pressure that day. He also said that he has a mental disorder and that sometimes he does not remember things. He said that he did not remember taking an oath to tell the truth on the day he pled guilty. He said that when he tried to say something in his own defense at the plea hearing, the judge told him that he did not have anything else to say because he had already signed his plea. Although the prosecutor quoted the statement from the transcript of his guilty plea hearing, he said that he did not think that he told the judge that he was not guilty of possessing the crack cocaine found in his truck but that another person was in the truck, He stated that he did not remember agreeing that he was guilty of jointly possessing the crack cocaine. He said that all he remembered was signing the plea agreement.

## I. SUPPRESSION OF THE CRACK COCAINE

The defendant contends that the trial court should have suppressed the crack cocaine that Officer Fisher found in the truck because the officer did not have probable cause to search the truck with the drug detection dog. She argues that although the officer claimed that he stopped the truck for driving on the wrong side of the road and having a broken taillight, the road was narrow, they passed the officer in a curve, and the area was dark with few streetlights. She states that the officer's only reason for using the drug detection dog was that she and Mr. Cunningham appeared nervous. She claims that this did not give the officer probable cause for the warrantless search. The state contends that the defendant has waived this issue by failing to include it in her motion for a new trial.

Alternatively, it argues that because the defendant was only a passenger in the truck belonging to Mr. Cunningham, she had no reasonable expectation of privacy in the truck and cannot challenge the search. Finally, the state contends that the officer properly stopped the truck when it forced him off the road. It maintains that no further cause was needed for allowing the dog to sniff the truck because a dog sniff is not a search. It argues that the dog's alerting on the driver's side of the truck gave the officer probable cause to search the truck.

The trial court denied the defendant's motion to suppress the crack cocaine finding that the officer properly stopped the truck based upon his undisputed testimony that he was almost forced off the road by the truck. The court found that the officer investigated the truck with the drug detection dog, which alerted on the driver's door. It found that the officer then searched the truck and found the drugs on the middle of the seat. Although the state challenged the motion to suppress at the beginning of the hearing, arguing that the defendant lacked a reasonable expectation of privacy in the truck, the trial court made no specific findings on this issue. Instead, the court simply found that the stop was justified and that the drugs were admissible against the defendant because she was a passenger in the truck.

Initially, we note that the defendant included this issue in her amended motion for a new trial. The trial court overruled both the motion for new trial and the amended motion in an order filed November 1, 1999. The state's contention that the issue is waived is without merit.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 22-23.

Under the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution, the constitutional limit upon the government's intrusion into an individual's matters or activities, i.e., whether a "search" has occurred, depends upon whether the individual had a reasonable expectation of privacy in those matters or activities. See California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811 (1986); United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984); State v. Roode, 643 S.W.2d 651, 652-53 (Tenn. 1982). A defendant enjoys no reasonable expectation of privacy in a vehicle in which he or she is solely a passenger and has no ownership interest. Griffin v. State, 604 S.W.2d 40, 43 (1980); see State v. Burton, 751 S.W.2d 440, 446 (Tenn. Crim. App. 1988). In this case, the defendant testified that she accepted a ride from Mr. Cunningham, who owned the truck. The defendant did not have a reasonable expectation of privacy in the truck.

Furthermore, the trial court properly found that the officer was justified in stopping the truck. An automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pully, 863

S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580 (1975); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). In this case, the officer testified that Mr. Cunningham's truck forced him off the road. He stated that when he looked at his rearview mirror, he noticed that one of the truck's taillights was not illuminated. Driving any vehicle "outside of the proper lane provided for that purpose and in the proper direction and to the right of the central dividing curb, separation section, or line" is a Class C misdemeanor. Tenn. Code Ann. § 54-16-108(a)(3), (b). Every truck manufactured after January 1, 1968, must have two operating taillights, and the failure to do so is a Class C misdemeanor. Tenn. Code Ann. § 55-9-402(b)(1), (c), (e). The officer saw Mr. Cunningham's truck traveling outside of its lane with one operating taillight. This observation gave the officer reason to suspect that the driver was violating the traffic laws.

The defendant argues that the officer's perception that she and Mr. Cunningham were nervous did not provide probable cause for the officer to search the truck with the drug detection dog. A "canine sweep around the perimeter of a vehicle which has been legally detained does not constitute a search, and thus, does not require probable cause or reasonable suspicion so long as the duration of the canine sweep does not exceed the time necessary for the traffic stop." State v. Dennis R. England, No. M1997-00254-SC-R11-CO, Sumner County, slip op. at 8 (Tenn. May 30, 2000) (for publication). In this case, the defendant testified that the officer called to check Mr. Cunningham's registration, asked Mr. Cunningham to step to the rear of the truck, and subsequently asked her to get out of the truck. She testified that the officer then brought the drug detection dog from his car to the truck. The record contains no evidence that the defendant was unreasonably detained by the officer's permitting the dog to sniff the truck.

In order to find that an officer had probable cause based upon a positive alert by a trained drug detection dog, the trial court must make factual findings regarding the dog's reliability. England, slip op. at 7. In making this finding, the trial court may consider the dog's training, the dog's record of false negative and false positive alerts, the officer's training, and the officer's experience with this particular dog. Id. At the suppression hearing, the officer testified that he and the drug detection dog both attended the training required for certification. At trial, the officer elaborated upon this testimony, stating that the dog is a Dutch shepherd and was first certified in December 1997 by the Huntsville, Alabama Police Department, which is a designated training area of the United States Police Canine Association. He stated that the National Narcotic Detector Dog Association certified the dog in May 1998. He said both organizations re-certify the dog annually. The trial court did not have the benefit of our supreme court's holding in England, requiring that it make findings regarding the drug detection dog's reliability. Nevertheless, in reviewing the record, we have discovered no evidence that preponderates against the trial court's implicit determination that the dog and officer were trained and reliable. The dog's alert on the driver's door gave the officer probable cause to search the truck's interior, especially in light of the defendant's and Mr. Cunningham's nervous demeanor. The trial court properly admitted the crack cocaine.

## II. SUFFICIENCY OF THE EVIDENCE

-6-

The defendant contends that the evidence is insufficient to show that she actually, jointly, or constructively possessed the crack cocaine. She argues that her only connection to the drugs was her presence as a passenger for a brief time in the truck owned by Mr. Cunningham. She further points to Mr. Cunningham's testimony that the drugs were his and that she did not know that the drugs were in the truck. The state contends that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A conviction for cocaine possession may be based upon either actual or constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Before a person can be found to constructively possess a drug, it must appear that the person has 'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" Id. (citations omitted) (brackets in original). Standing alone, a defendant's mere association with a person who possesses drugs or presence in a place where drugs are found is insufficient to establish constructive possession. Id.

Viewed in the light most favorable to the state, the evidence in this case shows more than the defendant's association with Mr. Cunningham or her presence in Mr. Cunningham's truck. The officer testified that the defendant was very nervous and fidgety when he stopped the truck. The officer found the pill bottle containing the crack cocaine next to the defendant's purse. The defendant admitted her addiction to crack cocaine. The defendant failed to appear for her arraignment in this case and subsequently attempted to elude Officer Davidson by giving a false name. Mr. Cunningham's testimony that the cocaine belonged to him and that the defendant knew nothing about it was impeached by his statement from his guilty plea hearing, incriminating the defendant for the drugs found in his truck. The defendant emphasizes her testimony that she did not know about the drugs and that she had the opportunity to throw the drugs out of the truck had she known about them. The jury obviously rejected this testimony. The evidence is sufficient to support the defendant's conviction for possession of cocaine with intent to sell.

### III. SENTENCE

The defendant contends that the trial court erred in sentencing her to incarceration rather than community corrections or probation. She argues that she has a serious drug and alcohol problem for which she needs treatment. Furthermore, she claims that the state failed to show why confinement is necessary in her case and why she should not receive an alternative sentence. The state contends that the trial court properly sentenced the defendant to confinement due to her prior criminal history.

The defendant's presentence report reveals that the then thirty-seven-year-old defendant was divorced and resided with her two minor children before she was taken into custody. The defendant's prior record consists of a May 1997 conviction for driving on a revoked license, a January 1995 federal conviction pursuant to the defendant's guilty plea to counterfeiting, and an April 1989 conviction pursuant to a guilty plea to possession of cocaine in Mississippi. An addendum to the presentence report reveals that the defendant completed the eleventh grade and obtained her GED in 1978. The defendant reported that she began using alcohol and drugs as a teenager. She admitted that she used alcohol daily and cocaine daily or weekly. She listed her employment history as babysitting and housekeeping. She stated that she had worked in a janitorial business and for Kmart.

The trial court found that the defendant was a Range I offender with a sentencing range of eight to twelve years. The court applied Tenn. Code Ann. § 340-35-114(1) to enhance the defendant's sentence to ten years, finding that she had a previous history of criminal convictions beyond those necessary for her range. It reduced the sentence to nine years because one of her prior convictions was very remote. It found no mitigating factors. The court found that due to her nine-year sentence, the defendant was not eligible for probation. Although it acknowledged that the defendant's apparent drug problem could qualify as a special need, the trial court found that the defendant was not an appropriate candidate for community corrections because of her prior felony convictions. The court found that the defendant needed alcohol and drug treatment in the Department of Correction.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting a <u>de novo</u> review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 168; <u>State v. Moss</u>, 727 S.W.2d 229 (Tenn. 1986).

The defendant challenges the manner of service of her sentence. As a Range I, standard offender convicted of a Class B felony, the defendant is not presumed to be a favorable candidate for alternative sentencing options. <u>See</u> Tenn. Code Ann. § 40-35-102(6). As noted by the trial court, she is not eligible for probation due to her nine-year sentence. Tenn. Code Ann. § 40-35-303(a). The defendant does meet the minimum criteria for a sentence to the community corrections program because she would otherwise be sentenced to incarceration; she was convicted of a non-violent, drug-related felony; she did not use or possess a weapon in the commission of the offense; she has no pattern of violent offenses or behavior; and she was not sentenced to incarceration or on escape at the time of sentencing. Tenn. Code Ann. § 40-36-106(a)(1)-(6). Meeting these minimum criteria does not guarantee a defendant admission to the community corrections program. Instead, these criteria are minimum standards to guide the trial court on which defendants should be considered for this program. Tenn. Code Ann. § 40-36-106(d).

A sentence of confinement should be based on the need to protect society by restraining a defendant with a long history of criminal conduct, to avoid depreciating the seriousness of the offense, or to deter effectively others who are likely to commit similar offenses. Tenn. Code Ann. § 40-35-103(1)(A)-(C); <u>see</u> <u>Ashby</u>, 823 S.W.2d at 169. Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5). The evidence does not preponderate against the trial court's finding that the defendant's history of convictions required a sentence of confinement. We also note that the defendant's admitted used of cocaine on a weekly basis constitutes criminal conduct. Her continued abuse of drugs and alcohol despite a prior conviction for possession of cocaine and despite her arrest in this case reflects poorly upon her amenability to rehabilitation. The trial court did not err in denying the defendant a sentence alternative to confinement.

Based upon the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
JOSEPH M. TIPTON, JUDGE