# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 20, 2014 Session

## STATE OF TENNESSEE v. ROBERT LEE DRISKILL

**Appeal from the Circuit Court of Blount County**
**No. C-18848     David R. Duggan, Judge**

---

**No. E2013-01783-CCA-R3-CD - Filed July 24, 2014**

---

Robert Lee Driskill ("the Defendant") pleaded guilty to one count of driving under the influence ("DUI") and one count of violating the implied consent law. Pursuant to the Defendant's plea agreement, the trial court sentenced the Defendant to eleven months, twenty-nine days' incarceration, to be suspended on supervised probation after the service of forty-eight hours' confinement. In conjunction with his guilty plea, the Defendant reserved the following certified question of law: "Whether the officer's conduct violated the Defendant's rights under Article I, Section 7 or the Fourth Amendment when the officer through activating blue lights caused the Defendant to stop his moving vehicle and encounter the officer." Upon our thorough review of the record and applicable law, we hold that the Defendant is entitled to no relief. Accordingly, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments
### of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

George H. Waters, Maryville, Tennessee, for the appellant, Robert Lee Driskill.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Mike Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

The Defendant was indicted by a Blount County Grand Jury for one count of DUI and one count of violating the implied consent law. The Defendant filed a motion to suppress all evidence obtained as a result of the stop.

*Suppression Hearing*

At the suppression hearing, Officer Kevin Fuller testified that he had been employed with the Maryville Police Department ("MPD") for approximately six years. Through his employment with the MPD, he had received specialized training regarding DUI stops and arrests. On April 13, 2009, Officer Fuller was on patrol, and he ended up driving behind the Defendant's vehicle at approximately 10:30 p.m. He observed the Defendant's vehicle make a "too narrow" left turn from the current road of travel into the center turning lane of an adjacent road. Officer Fuller explained that the road onto which the Defendant's vehicle turned had five lanes: two lanes going each direction and a center turning lane. Eventually, the Defendant's vehicle shifted into the right lane designated for travel. Shortly thereafter, Officer Fuller observed the Defendant's vehicle make a "too wide" right turn, once again turning into the center turning lane. Approximately 100 yards later, Officer Fuller observed the following: "[T]here's a kind of sharp left-hand turn – a left-hand curve on Broadway. And the Defendant's vehicle crossed the center line at that time." He stated that the Defendant's vehicle "straddled the center line throughout the curve." According to Officer Fuller, the road on which they were traveling had only two lanes at that point: one lane traveling in each direction. As Officer Fuller followed the Defendant, the Defendant's vehicle "continued to ride the center line" and "crossed the center maybe once or twice more" before Officer Fuller stopped the Defendant. At this point, Officer Fuller stopped the Defendant because he had "[r]easonable suspicion of DUI." On cross-examination, Officer Fuller stated that he had reasonable suspicion by the time the Defendant's vehicle made the second, right turn, but Officer Fuller waited to stop the Defendant until finding a better location to stop.

The State entered into evidence the video recording of the events that transpired that evening. Upon watching the video, Officer Fuller clarified that, after the sharp curve, the Defendant's vehicle veered "extremely close to the line" or "on the line." Although he previously had testified that the Defendant's vehicle had "crossed the center maybe once or twice more," he noted that the video did not show it clearly. Following this proof, the trial court denied the Defendant's motion to suppress. The trial court expressly credited Officer Fuller's testimony. The court also stated the following regarding its findings:

Now, let's talk about the path of travel and what I saw. In terms of the left turn onto Washington, you can clearly see at the end, there is part of the turn that you just simply can't see on the video because of the angle of the camera. But, of course, the officer was watching. And I can see in the video right at the end of that turn that he comes back across – "he" being the Defendant – comes back across the double yellow lines to get into the correct lane of travel going north on Washington. . . . It was a – it was a narrow turn.

And then . . . he proceeds down the hill to where Washington and Broadway and Hall Road all meet and turns right onto East Broadway, traveling away from Maryville to the east, even part of that turn you can't see on the camera. But again it's clear that he crossed the double lines or whatever is there. . . . But it's clear that he crossed it because I can see him on the video coming back over it, again, to get in his correct lane.

And then I think the officer testified to about 100 yards later – I'm not sure exactly how far it is. It's a fairly short distance down to that pretty sharp turn to the left. . . . Clearly, he was across the center line there. And I said that he crossed the center line by at least a foot. The officer said two feet. I think it very well could have been a foot and a half to two feet. . . .

The trial court chose not to place any significance on the Defendant's vehicle's driving on the center line at the point past the curve. The court noted as its reasoning, "I've been going underneath that underpass for as long as I've been driving . . . . And there's a tendency to move to the left a little bit because it appears narrower."

Therefore, the trial court determined the following:

I think we had an improper turn from . . . Church Street onto Washington; I think we had an improper turn from Washington to the right onto East Broadway; and then we had a clear crossing of the center line of at least a foot, perhaps as much as two feet. So, even if I discount the riding of the center line that I could not see real clearly going up the hill to the underpass, I think . . . if you look to the totality of the circumstances, by the time of the crossing of the center line in the curve, the officer had observed three different times when the Defendant/driver did not either make a proper turn and/or crossed the center line.

Accordingly, the trial court determined that Officer Fuller had reasonable suspicion to stop the Defendant's vehicle and denied the Defendant's motion to suppress.

The Defendant subsequently entered a guilty plea to one count of DUI and one count of violating the implied consent law. Pursuant to the Defendant's plea agreement, the trial court sentenced the Defendant to eleven months, twenty-nine days, to be suspended to probation following service of forty-eight hours in confinement. In conjunction with his guilty plea, the Defendant reserved the following certified question of law:

> Whether the officer's conduct violated the Defendant's rights under Article I, Section 7 or the Fourth Amendment when the officer through activating blue lights caused the Defendant to stop his moving vehicle and encounter the officer.

The State recited the following factual basis for the plea:[1]

> [O]n April the 13th of 2009, Officer Kevin Fuller with the Maryville Police Department fell behind a silver Ford Taurus that was operating on the public roadways in Maryville City, Blount County, Tennessee, both on Washington Avenue and on East Broadway. While following this vehicle, Officer Fuller observed the vehicle either leave its lane of travel and cross the center line on multiple occasions. Based on this, Officer Fuller conducted a traffic stop on that motor vehicle.
>
> Upon stopping the motor vehicle, it was determined that the Defendant . . . had been operating that motor vehicle. And upon making contact with [the Defendant], Officer Fuller observed that he had bloodshot eyes, slurred speech, and a strong odor of alcohol coming from his person. A DUI investigation was conducted by Officer Fuller, in which the standardized field sobriety tests were conducted and questions were asked of the Defendant. Based on his performance on those field sobriety tests and admissions made by the Defendant as to drinking, Officer Fuller ultimately concluded that the Defendant . . . was operating a motor vehicle on those public roadways while under the influence of an intoxicant. . . .
>
> . . . .

---

[1] The Defendant stipulated to the factual basis of the plea, except "he d[id] not agree that he crossed the center line several times."

[A]fter being placed under arrest for driving under the influence, Officer Fuller requested that Defendant submit to a blood alcohol test to determine the drug or alcohol content of his blood and Defendant refused to submit to that test, as to count two of the indictment.

The Defendant timely appealed. We now turn to the Defendant's certified question, challenging the legality of Officer Fuller's stop of his vehicle.

## Analysis

### *Standard of Review*

When conducting a review of the trial court's determinations from a suppression hearing, questions regarding the witnesses' credibility, the weight and value of the proof, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, we will uphold the trial court's factual findings unless the preponderance of the evidence is otherwise. Id. However, where the trial court has applied the law to the facts, we will conduct a de novo review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Because the State is the prevailing party, it "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

> *Certified Question: Whether the officer's conduct violated the Defendant's rights under Article I, Section 7 of the Fourth Amendment when the officer through activating blue lights caused the Defendant to stop his moving vehicle and encounter the officer.*

Initially, we hold that this question was properly reserved and certified for our review. See Tenn. R. Crim. P. 37(b)(2)(A); State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996).

Our supreme court has recognized that, "[u]pon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop within the meaning of the Fourth Amendment." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). However, a warrantless investigatory stop of a motor vehicle is lawful under the Fourth Amendment "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968); Griffin v. State, 604 S.W.2d 40, 42 (Tenn. 1980)).

Our supreme court has defined "reasonable suspicion" as "a particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Davis, 354 S.W.3d 718, 727 (Tenn. 2011) (quoting State v. Day, 263 S.W.3d 891, 903 (Tenn. 2008)). Furthermore, our supreme court has held that, "[i]n determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances," including, among other things, "objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Watkins, 827 S.W.2d at 294. A court also may consider "rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." Id.

The evidence does not preponderate against the findings of the trial court that Officer Fuller stopped the Defendant's vehicle based on reasonable suspicion of DUI. At the suppression hearing, Officer Fuller testified that he first observed the Defendant's vehicle make a "too narrow" left turn which resulted in the Defendant's vehicle's driving into the turning lane for oncoming traffic. The video submitted at the hearing shows the Defendant's vehicle's left tires cross the double lines from that lane into the proper lane of travel. Officer Fuller testified that the Defendant's vehicle then made a "too wide" right turn, causing the Defendant's vehicle's tires to cross over into the lane of oncoming travel. Although the video does not clearly show this right turn, the trial court fully credited Officer Fuller's testimony. According to Officer Fuller, the Defendant's vehicle's tires then crossed the center line and "straddled the center line throughout the curve" in the road. The video submitted at the hearing supports Officer Fuller's testimony in this regard.

Accordingly, the proof presented of the Defendant's vehicle's right turn, left turn, and the turn along the curve in the road supports the trial court's determination that Officer Fuller had reasonable suspicion to stop the Defendant for DUI. Therefore, the trial court properly denied the Defendant's motion to suppress. Consequently, we answer the Defendant's certified question in the negative. He is entitled to no relief.

## Conclusion

For the foregoing reasons, we have answered the Defendant's certified question in a manner which entitles him to no relief. Accordingly, we affirm the Defendant's convictions.

_____
JEFFREY S. BIVINS, JUDGE