IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2001 Session

## TED RAY BRANNAN v. STATE OF TENNESSEE

**Post-Conviction Appeal from the Circuit Court for Franklin County**
**No. 9332-B     Buddy D. Perry, Judge**

_____

### No. M2000-01668-CCA-R3-PC - Filed May 15, 2002

_____

The defendant, Ted Ray Brannan, was found guilty by a Franklin County jury of aggravated burglary and theft of property. Accordingly, the trial court sentenced him to an effective sentence of twelve years, ten years as a Range III persistent offender for his aggravated burglary conviction to be served concurrently with his twelve year sentence as a career offender for his theft of property conviction. The defendant appealed his conviction to this Court, and we dismissed the appeal, finding that the appeal was not properly before this Court because the defendant had failed to file a timely motion for new trial or a timely notice of appeal. See State v. Ted Ray Brannan, No. 01C01-9704-CC-00148, 1998 WL 242453, at *1 (Tenn. Crim. App. at Nashville, May 15, 1998). The defendant then sought post-conviction relief, and the post-conviction court found that the defendant was deprived of a direct appeal because his counsel was ineffective in failing to file a motion for new trial or a notice of appeal. Accordingly, the post-conviction court granted the defendant a delayed appeal. However, the court found that the defendant's other allegations of error were meritless. The defendant is now before this Court on a delayed appeal challenging the post-conviction court's finding that his other post-conviction issues lacked merit. Although we find that the lower court should have dismissed the post-conviction petition when granting him a delayed appeal, in the interest of judicial economy, we will address the issues pertaining to the post-conviction petition as well as those in his direct appeal. Having found that all the issues in this appeal lack merit, the judgment of the circuit court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Thomas C. Faris, Winchester, Tennessee, for appellant, Ted Ray Brannan.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Stephen Blount, Assistant District Attorney General, for appellee, State of Tennessee.

# OPINION

## Factual Background

On January 10, 1994, the home of J.C. Garner was burglarized. An item of jewelry and three shotguns were taken from the home. Charles Rose drove by the Garner home at approximately noon on January 10, 1994. He observed a blond-haired young man standing near the road cradling guns in his arms and decided to investigate the situation further. As he drove up the road a short distance looking for a suitable place to turn around, he passed a brown van. Rose turned around and drove back toward the spot where the young man had been standing. En route, he again passed the brown van, this time traveling in the opposite direction. He could not find the blond-haired young man.

A short time later, a brown van was stopped in nearby Coffee County. The driver of the van was the Defendant. Mickey Arp was a passenger in the van. Police officers discovered three shotguns concealed under some clothing in the rear of the van and a woman's gold watch on the person of Mickey Arp. J.C. Garner later identified the property as having been taken from his home. It appears that at the time of the crimes, Mickey Arp was nineteen years old and had blond hair. The Defendant was forty years old and had brown hair.

Mickey Arp implicated the Defendant in the commission of the crimes. Mr. Arp testified that the Defendant picked him up and drove to the Garner home. The Defendant then told Mr. Arp which door Garner left unlocked and the location of the guns in the home. According to Mr. Arp, the Defendant told him that he would drop Mr. Arp off, drive down the road a short distance, turn around and come back to pick Mr. Arp up outside the home. J.C. Garner testified that he had known the Defendant since the latter had been a child. Garner stated that the Defendant had been in his home several times.

On March 8, 1994, the Defendant and Mickey Arp were jointly indicted on charges of aggravated burglary and theft of property valued between one thousand dollars ($1000) and ten thousand dollars ($10,000). Mickey Arp's case was later severed from the Defendant's case. The Defendant was tried on September 1, 1994, and found guilty as charged.

State v. Ted Ray Brannan, No. 01C01-9704-CC-00148, 1998 WL 242453, at *1-*2 (Tenn. Crim. App. at Nashville, May 15, 1998).

At trial, the defendant was represented by the public defender's office. However, after the jury returned its verdict, the defendant hired private counsel to represent him at the sentencing hearing and on appeal.[1] After the defendant was sentenced by the trial court, his private counsel failed to file either a motion for new trial or a notice of appeal. About a month thereafter, private counsel filed a motion seeking to be relieved as the defendant's counsel. However, this motion was never presented to the trial court for a hearing. The defendant, who was having difficulty contacting his counsel, complained about his counsel's representation to the Board of Professional Responsibility. The trial court held a hearing in chambers regarding this matter, relieved private counsel of the defendant's representation, reinstated the public defender's office, and attempted to grant the defendant a delayed appeal, finding that the defendant had been prejudiced by his private counsel's failure to file a timely motion for new trial or notice of appeal. Accordingly, the defendant's public defender filed a motion for new trial. The court denied the defendant's motion, and the public defender filed a notice of appeal.

On direct appeal, this court found that the trial court did not have jurisdiction to grant the defendant a delayed appeal, as such a remedy may only be granted by a post-conviction court. Id. at *3. Furthermore, because the defendant did not file a timely motion for new trial or notice of appeal, we dismissed the defendant's appeal without reaching the merits of the issues he raised therein. Id. at *4. Our supreme court denied the defendant's application for permission to appeal, and the defendant then filed a pro se post-conviction petition. The defendant's counsel later filed an amended petition and a subsequent further-amended petition. The post-conviction court conducted a hearing and found that the defendant had not received effective representation by his appellate counsel and therefore granted him a delayed appeal, as his appellate counsel's ineffective representation precluded this Court from reaching the merits of the issues that he raised on direct appeal. However, the post-conviction court also went on to address the other post-conviction issues raised in the defendant's petition. In the interest of judicial economy, we elect to address the defendant's appeal of his denied post-conviction issues, as well as his delayed appeal. After reviewing the record and applicable case law, we find that none of the defendant's issues merit relief and accordingly affirm his conviction.

**Jurisdiction of This Court**

Initially, we must address this Court's jurisdiction to hear the issues that the defendant raises in the instant appeal. As noted above, the defendant is before this Court on a delayed appeal as well as a collateral attack on his conviction. The post-conviction court granted the defendant a delayed direct appeal pursuant to Tennessee Code Annotated section 40-30-213(a) of the Post-Conviction Procedure Act, which provides that a post-conviction court may grant a delayed appeal after finding that the defendant was unconstitutionally denied an opportunity to appeal his original conviction.

---

[1] Because there was apparently some confusion regarding who was responsible for filing the trial transcripts for appellate review, the public defender's office filed a motion for the trial court to ascertain its role in representing the defendant. The trial court declared that the public defender's office had been relieved of representing the defendant and that private counsel was responsible for the defendant's continued representation.

Tenn. Code Ann. § 40-30-213(a)(1). The post-conviction court correctly found that the defendant was indeed denied the opportunity to appeal his original conviction because his appellate counsel failed to file a timely motion for new trial and notice of appeal. This Court has outlined the proper procedure for a post-conviction court to follow when granting a delayed appeal to a petitioner who is seeking both a delayed appeal and bringing a collateral attack on his or her conviction, alleging constitutional violations purportedly entitling him to a new trial:

> In those situations where an appellant seeks post-conviction relief both in the form of a new trial and a delayed appeal, we believe the better procedure is for the trial court to grant the delayed appeal, when warranted, and dismiss the collateral attack upon the conviction without prejudice. We are cognizant of the statutory provision which contemplates the filing of only one petition for post-conviction relief from a single judgment. Tenn. Code Ann. § 40-30-202(c). This statute provides that if a petition has been resolved on its merits, a subsequent petition must be summarily dismissed. Tenn. Code Ann. §§ 40-30-202(c), -206(b). Conversely, we interpret this to mean that those petitions not resolved "on their merits" are not subject to dismissal. Id. This procedure would allow the appellant to pursue his post-conviction relief after review from the supreme court. The order of the supreme court denying an application for permission to appeal pursuant to Rule 11 shall be deemed a final judgment and the petition for post-conviction relief must be filed within one year of the date of this order; otherwise, the petition is barred. Tenn. Code Ann. § 40-30-202.

Gibson v. State, 7 S.W.3d 47, 50 (Tenn. Crim. App. 1998). This procedure allows the defendant the benefit of having his conviction reviewed on direct appeal before seeking post-conviction relief. This is an important safeguard, as "all of the petitioner's potential claims for post-conviction relief will not be apparent until the conclusion of the delayed appeal." Michael Todd Drinnon v. State, No. E1999-2001-CCA-R3-PC, 2000 WL 1478568, at *4 (Tenn. Crim. App. at Knoxville, Oct. 6, 2000); see also Michael Douglas Hughes v. State, No. M2001-00888-CCA-R3-PC, 2001 WL 1660843, at *2 (Tenn. Crim. App. at Nashville, Dec. 28, 2001) (quoting same); State v. Abebreellis Zandus Bond, No. W1999-02593-CCA-R3-CD, 2001 WL 178460, at *2 (Tenn. Crim. App. at Jackson, Feb. 21, 2001) (holding that a post-conviction court erroneously failed to dismiss the petitioner's collateral attacks on his petition when granting him a delayed appeal; the court should not have ordered the petitioner to include those issues in his amended motion for new trial because by doing so the court deprived him of his "right to later seek review of appellate counsel['s] errors").

However, in the instant case, the trial court, while correctly granting the defendant a delayed appeal, failed to dismiss the defendant's issues raised as a collateral attack on his conviction. Instead, it appears that the trial court proceeded to address the merits of these alleged constitutional violations. Nevertheless, in two cases that are procedurally analogous to the instant case, Gibson, 7 S.W.3d 47, and Michael Todd Drinnon, 2000 WL 1478568 (citing Gibson), this Court elected to consider the defendant's post-conviction issues, as well as the defendant's delayed appeal. In the interests of judicial economy and out of respect for precedent, we elect to do the same.

## I. Defendant's Delayed Appeal
## Sufficiency

The defendant challenges the sufficiency of the evidence used to convict him, asserting that the testimony of his alleged accomplice, Mickey Arp, was not sufficiently corroborated. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

The defendant was convicted on both the testimony of his alleged accomplice and on the evidence gained through the search of the defendant's vehicle, both of which the defendant challenges. We will address first whether the accomplice testimony was sufficiently corroborated and then address the legality of the search and seizure below.

## Accomplice Corroboration[2]

We begin our analysis of whether the accomplice testimony in the instant case was sufficiently corroborated with the well-settled premise that convictions may not be based solely upon the uncorroborated testimony of accomplices. See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. See State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App.1984). More specifically, the rule of accomplice corroboration is as follows:

> The rule of corroboration as applied and used in this State is that there must be some
> evidence independent of the testimony of the accomplice. The corroborating

---

[2] In the instant appeal, the defendant also alleges that the trial court erred by charging the pattern jury instruction concerning accomplices. However, the defendant failed to challenge the jury instruction in his motion for new trial or amended motion for new trial. Accordingly, we find that the defendant has waived this issue on direct appeal. See Tenn. Rule App. P. 3(e).

evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must[,] of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

State v. Griffis, 964 S.W.2d 577, 588-89 (Tenn. Crim. App. 1997) (quoting Sherrill v. State, 321 S.W.2d 811, 814 (Tenn. 1959)).

In addition,

The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

Griffis, 964 S.W.2d at 589; see also, Bigbee, 885 S.W.2d at 803. We further note that the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine. See id.; State v. Maddox, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

After reviewing the record, we find that there was more than sufficient evidence to corroborate Mr. Arp's testimony. Mr. Arp testified that he burglarized the Garner home and stole several guns at the defendant's direction. He testified that he did not know Mr. Garner and that the defendant provided him with instructions regarding how to enter the Garner home, where the guns were stored, and how to access those guns. He testified that the defendant, who was driving a brown van, dropped him off at the Garner home, circled around the neighborhood, and returned to pick him up once he had stolen the guns. Mr. Arp testified that he collected the guns and carried them to the side of the road opposite the Garner house where the defendant picked him up.

Mr. Garner testified that although he knew of Mr. Arp, he did not know him personally. However, he testified that knew the defendant well and that the defendant had been in his home on several occasions and was known to drive a brown van. On the day of the burglary, Charles Rose saw a brown van traveling in one direction on the road in front of the Garner home and several minutes later saw it traveling in the opposite direction. Mr. Rose saw a young man matching Mr. Arp's description cradling guns in his arms, standing on the side of the road opposite the Garner home. A few minutes later, this young man had disappeared from the side of the road, presumably because he had been picked up by the defendant. Approximately one hour later, police stopped and searched the defendant's vehicle and found Mr. Garner's guns concealed under some clothes on the floor of the van.

Recognizing that only a modicum of evidence is necessary to corroborate an accomplice's testimony, we find that the foregoing direct and circumstantial evidence was more than adequate to corroborate Mr. Arp's testimony.

## Legality of Stop and Search of Defendant's Vehicle

The defendant challenges the legality of his traffic stop, alleging that a police officer made an illegal pretextual stop and that the officer further detained him without probable cause. "Stopping an automobile and detaining its occupants constitutes a seizure" within the meaning of the federal and state constitutions. Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); see also State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). However, a police officer may conduct an investigatory stop of a vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a crime has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Griffin v. State, 604 S.W.2d 40, 42 (Tenn. 1980). An investigatory stop based on reasonable suspicion requires a lower quantum of proof than probable cause. State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993). In determining whether reasonable suspicion exists, the reviewing court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). These circumstances include, but are not limited to, objective observations and the rational inferences and deductions of trained police officers. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In analyzing the reasonableness of an investigatory stop, this Court is not bound or limited in its consideration of the facts. Instead, this Court is entitled to draw its own conclusions from the facts as found. State v. Marshall, 870 S.W.2d 532, 538 (Tenn. Crim. App. 1993).

In the instant case, a police officer stopped the defendant because the defendant nearly hit his vehicle in an intersection. The police officer made the decision to follow and stop the defendant's brown van because he believed that the driver of the van was drunk. We believe that the police officer's decision to stop the defendant's vehicle was reasonable, based upon the objective observation that the defendant was driving erratically, nearly hitting a police officer's vehicle in an intersection. Therefore, the officer had sufficient reasonable suspicion to stop the defendant's vehicle.

After the officer decided to follow and stop the defendant's vehicle, the officer contacted the communications center and reported the van's description and a partial tag number. The communications officer then informed the officer that a van matching the officer's description was suspected of being involved in a recent burglary. In Houston v. State, our supreme court found that based upon information received from witnesses to a robbery/murder describing the perpetrator and the get-a-way vehicle, police had probable cause to stop and search the defendant's vehicle, which matched this description. Houston v. State, 593 S.W.2d 267 (Tenn. 1980 Accordingly, because the officer had information that a vehicle matching the description of the defendant's vehicle was involved in a recent burglary, we find that the officer had sufficient information to form probable cause to stop and detain the defendant in order to search his vehicle.

Moreover, once the police officer stopped the defendant, he informed the defendant that a vehicle matching a description of the defendant's vehicle was suspected of being involved in a recent burglary. He then asked the defendant if he would consent to a search of his vehicle, informing the defendant that he had the right to refuse to consent to the search. The defendant gave his consent, and the police officers searched his vehicle, recovering the stolen guns. We find that the defendant's consent to search his vehicle was made voluntarily, as he was informed of his right to refuse to consent to the search, and therefore the following search of his vehicle was conducted legally.

## Chain of Custody

The defendant argues that the trial court erroneously overruled his objection to the introduction of the guns and jewelry that the police seized when searching his vehicle. The defendant contends that the state failed to establish the proper chain of custody and therefore this evidence was inadmissible. Before tangible evidence may be introduced, the party offering the evidence must either call a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holloman, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992). "However, the failure to call all of the witnesses who handled the evidence does not necessarily preclude its admission into evidence." State v. Holbrooks, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998). Indeed, "[t]he identity of tangible evidence need not be proved beyond all possibility of doubt and all possibility of tampering need not be excluded." State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). Rather, "[i]t is sufficient if the facts establish a reasonable assurance of the identity of the evidence." State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990). "Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion." Holloman, 835 S.W.2d at 46.

In the instant case, the trial court determined that the state had established the requisite chain of custody. The trial court based its determination on Officer Rose's testimony. The officer testified that once they had seized the guns and jewelry from the defendant's vehicle, the police placed these items in a patrolman's car. Officer Rose then went to collect Mr. Garner and take him to the county jail, where Mr. Garner saw the guns in the patrolman's car. Officer Rose then took the items out of the trunk and into the station where he photographed them. After photographing the evidence, he remitted a receipt to Mr. Garner and then traveled to the Garner home to return Mr. Garner's property to him.

The defendant complains that the state did not produce any witness to testify that the same items that were seized from the back of the defendant's vehicle were the same items that were delivered to the county jail. Specifically, he argues that the patrolman who delivered these items to the jail should have testified and that by failing to call this patrolman as a witness, the state failed to establish the chain of custody. However, as stated supra, this Court has held that it is not necessary to offer the testimony of every person who handled the evidence in question, provided that the state establishes a reasonable assurance of the evidence's identity. See Holbrooks, 983 S.W.2d at 701; Woods, 806 S.W.2d at 212. Officer Rose's testimony tracked the evidence from its point of seizure until its return to Mr. Garner. The evidence, according to the officer's testimony, was secured and in police control during this entire period of time. Therefore, we find that the trial court did not "mistaken[ly] exercise [its] discretion" when crediting Officer Rose's testimony and finding that the state had established a sufficient chain of custody. See Holloman, 835 S.W.2d at 46.

**Brady Violations**
A.  Disclosure of Accomplice's Pretrial Statement

The defendant claims that the state withheld certain exculpatory material from the defense until trial.  Specifically, the defendant argues that the state erroneously failed to disclose the prior inconsistent statements of his accomplice, Mickey Arp, until trial, despite the defendant's timely motion to disclose exculpatory evidence.  We first note that the defendant failed to make a timely objection when the state did disclose this information at trial, nor did he request a continuance or mistrial.  See Tenn. R. App. P. 36.  Therefore, this issue is waived.  However, while it is questionable whether this evidence is exculpatory at all, it is unquestionable that its non-disclosure pretrial was not prejudicial to the defense.

In Brady v. Maryland, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); see also Hartman v. State, 896 S.W.2d 94, 101 (Tenn. 1995).  In order to establish a due process violation under Brady, four prerequisites must be met:

1.  The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information, whether requested or not);
2.  The state must have suppressed the information;
3.  The information must have been favorable to the accused; and
4.  The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995).  The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence.  Id.

In determining the materiality of undisclosed information, a reviewing court must establish whether "in [the] absence [of the information] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).  In other words, evidence is considered material only if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different.  Edgin, 902 S.W.2d at 390-91 (citation omitted).

Generally, if there is only a delayed disclosure of information, in contrast to a complete failure to disclose exculpatory information, Brady does not apply, unless the delay itself causes prejudice.  See Sylvester Smith v. State, No. 02C01-9801-CR-00018, 1998 WL 899362, *7 (Tenn. Crim. App. at Jackson, Dec. 28, 1998); State v. Jim Inman, No. 03C01-9201-CR-00020, 1993 WL 483321, *9 (Tenn. Crim. App. at Knoxville, Nov. 23, 1993).

In the instant case, the defendant's accomplice made a pre-trial statement to the police that both he and the defendant had entered the Garner home and stolen the guns. However, at trial, he testified that he entered the Garner home alone.  It is highly questionable whether the accomplice's pretrial statement is Brady material in the first place.  However, after reviewing the record, we find that the defendant was not prejudiced by the failure to disclose this statement pre-trial.  Defense counsel conducted a thorough cross-examination of Mr. Arp and elicited several confessions from

Mr. Arp that he had lied in earlier statements. Therefore, although the defendant did not have the benefit of these statements before trial, nevertheless, defense counsel was able to conduct a thorough and effective cross-examination of Mr. Arp despite the late disclosure.

## B. Disclosure of Promises of Leniency

The defendant complains that the prosecution erroneously failed to disclose to the defense that it promised Mr. Arp that "every consideration" would be given to his application for pretrial diversion if he testified for the state at the defendant's trial. The defendant argues that this was a promise of leniency by the state, evidenced by the fact that the state granted Mr. Arp's pretrial diversion after the defendant's trial. In State v. Smith, our supreme court held that an accused has a right to explore promises of leniency to a prosecution witness on cross-examination in order to show a motive for testifying falsely for the state and that undue restriction of this right may sometimes violate a defendant's right to confrontation. State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994); see also Delaware v. VanArsdall, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); Cohen, Paine & Sheppeard, Tennessee Law of Evidence § 616.3 (2d ed.1990).

Thus, the issue is whether a statement by the state that it will give a defendant's application for a pretrial diversion "every consideration" is tantamount to a promise of leniency in exchange for testimony. We find that the state's agreement was tantamount to a promise of leniency, as it seems very probable that the state's agreement influenced Mr. Arp to testify against the defendant at trial. Moreover, according to the prosecutor, Mr. Arp's application for pre-trial diversion was on file for "months and months and months" before trial, and the state granted Mr. Arp's application thirty to forty-five days after the defendant's trial.

As discussed supra, in Brady, the United States Supreme Court held that any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The duty to disclose extends to all "favorable information," regardless of whether the evidence is admissible at trial. State v. Marshall, 845 S.W.2d 228, 232-33 (Tenn. Crim. App. 1992). In Giglio v. United States, the Supreme Court held that both exculpatory and impeachment evidence fall under the Brady rule. Giglio v. United States, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104; see also, United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985).

Moreover, in order to establish a Brady violation, the defendant must prove the four factors outlined supra, including the materiality of the suppressed information. Again, evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. Bagley, 473 U.S. at 682. Furthermore, a defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); see also, Edgin, 902 S.W.2d at 390. There must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting Kyles, 514 U.S. at 435).

Because of the stringent standard set forth for determining whether a statement is material, we find that the disclosure of this information would not have put "the whole case in such a different

light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435. On cross-examination of Mr. Arp, defense counsel asked Mr. Arp whether he believed that his testimony at trial would "lock down" his immunity from prosecution for his involvement in this crime. He replied that he did not believe so, which was consistent with his testimony at the motion for new trial hearing. He later responded to a series of questions by stating that he believed that his attorney would not allow him to testify "unprotected." We cannot say that a further admission by Mr. Arp that he would receive "every consideration" in his pretrial diversion application undermines confidence in the verdict.

### Scope of Cross Examination

The defendant complains that the trial court erred by ruling that defense counsel could not cross-examine Mr. Arp regarding his failure to include a recitation of the events of the instant crime in his application for pretrial diversion. The defendant contends that the facts of the crime are routinely considered by the prosecutor when deciding whether to grant a defendant's application for pre-trial diversion, and therefore defense counsel should have been allowed to inquire into Mr. Arp's failure to include such a statement, giving him an opportunity to further discredit Mr. Arp's testimony. The trial court limited defense counsel's cross-examination of Mr. Arp on this subject because it was trial court's practice not to require defendants to include a recitation of the facts, as the court deemed this to be a violation of the defendant's Fifth Amendment rights. Therefore, the court found that Mr. Arp's failure to include a recitation of the facts of his crime in his application for pretrial diversion was not a relevant subject of cross-examination because it was merely a reflection of the court's policy.

The propriety, scope, manner and control of testimony and other evidence, including the scope of cross-examination, are matters entrusted to the sound discretion of the trial court. See State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1994); State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978)); see also Tenn. R. Evid. 611. Absent a clear abuse of this discretion that results in manifest prejudice to the accused, this Court will not interfere with the trial court's exercise of its discretion in matters pertaining to the examination of witnesses. Coffee v. State, 216 S.W.2d 702 (1948); State v. Johnson, 670 S.W.2d 634 (Tenn. Crim. App. 1984).

We find no abuse of discretion in the limitations placed on the cross-examination of Mr. Arp. However, regardless of whether the trial court erred by so limiting defense counsel's cross-examination, we find that the defendant was not prejudiced by the trial court's ruling because defense counsel conducted a thorough cross-examination of Mr. Arp, pointing out inconsistencies in Mr. Arp's prior statements to the police. Therefore, in view of the high quality of defense counsel's cross-examination of Mr. Arp, we do not find that if counsel had received the desired response, the response would have affected the outcome of the trial.

## II.  Defendant's Post-Conviction Petition
## Post-Conviction Standard of Review

A petitioner bringing a post-conviction petition for relief bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks, 983 S.W.2d at 245 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Furthermore, the appellate court is bound by the trial court's findings of fact, unless the record preponderates against those findings. Id. at 245.

## Prosecutorial Misconduct

The defendant alleges that the attorney general who prosecuted his trial engaged in prosecutorial misconduct, thereby denying him his right to a fair trial. Specifically, the defendant alleges that the prosecutor (1) improperly referred to the petitioner's failure to confess/testify at trial in closing argument; and (2) improperly inferred that the defendant had burglarized the Garner home on a prior occasion.

First, we note that although the appellant bears the burden of preparing the record for appellate review, the defendant did not include a transcript of the closing arguments. See State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn.1993). Thus, we are precluded from determining if the prosecutor improperly referred to the defendant's failure to confess or testify at trial.

We also find meritless the defendant's claim that he was denied a fair trial because the prosecutor inferred that the defendant had burglarized the Garner home on a prior occasion, thereby denying him a fair trial. At the sentencing hearing, the prosecutor discussed the victim-impact statement with the trial court, stating his belief that Mr. Garner had been a victim of a previous burglary was a relevant sentencing factor. This statement was not made before the jury, and thus could not have denied the defendant a fair trial.

## Effectiveness of Trial Counsel

The defendant claims that his trial counsel was ineffective because he (1) failed to call a material witness and review certain police logs; (2) failed to move for a hearing regarding his motion to suppress; and (3) failed to move for a mistrial based on the prosecutor's improper statements during closing argument. After addressing each of these issues in turn, we find that none of them constitute deficient performance.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence

demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. Adkins, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. Id. However, such deference to counsel's tactical decisions applies only if counsel makes those decisions after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The defendant alleges that his trial counsel's representation was deficient because he failed to call a witness who could substantiate his claim that he was en route to visit a mechanic when the police stopped him and because he failed to introduce certain police logs that would have been beneficial to the defense. The trial court found that counsel did attempt to contact the mechanic, but decided not to subpoena him because he did not believe that the mechanic's testimony would be particularly relevant, as the defendant did not have his vehicle repaired by this mechanic on the day of his arrest. We find that the decision not to subpoena a witness who counsel believes will offer irrelevant testimony is a reasonable tactical decision. Furthermore, regarding the defendant's claim that counsel was deficient by failing to introduce certain police logs at trial, the record evidences that counsel reviewed the logs thoroughly and decided that they would not be beneficial to the defense, as they could not support the defendant's version of his arrest. Again, we find this to be sound trial strategy and will not re-evaluate counsel's tactical decision.

The defendant also argues that his trial counsel was deficient in his representation because he did not request a hearing to determine the merits of his motion to suppress. However, because we have found that the defendant's suppression issue lacks merit, the defendant was not prejudiced by his counsel's failure to make such a request. Furthermore, the defendant has waived his contention that his counsel was deficient by failing to move for a mistrial in response to the prosecutor's allegedly improper comments because the defendant has failed to provide a transcript of the closing arguments in the appellate record. Thus, we cannot determine whether the prosecutor's comments warranted a motion for a mistrial and therefore whether counsel's failure to move for a mistrial constituted deficient performance or prejudiced the defendant.

## Conclusion

For the foregoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE