# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
October 14, 2003

## STATE OF TENNESSEE v. KIMBERLY JEANNINE COX

**Appeal from the Circuit Court for Montgomery County**
**No. 40200158   Michael Jones, Judge**

---

**No. M2002-01849-CCA-R3-CD - Filed April 27, 2004**

---

The defendant was stopped for failing to use a turn signal when making a left-hand turn.  The officer obtained consent to search her person, vehicle, and motel room.  Upon searching her motel room, the officer found cocaine.  The defendant filed a motion to suppress that the trial court denied.  The defendant entered a plea of guilty to one count of possession of cocaine greater than .5 grams.  The defendant reserved a certified question as to whether her consent was valid under the federal and state constitutions.  We conclude that the defendant's consent was voluntarily given and that the evidence was properly admitted at trial.  Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined and DAVID G. HAYES, J. filed a dissenting opinion.

Russel A. Church, Assistant Public Defender, Clarksville, Tennessee, for the appellant, Kimberly Jeannine Cox..

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; John Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On the morning of February 3, 2002, at approximately 12:15 a.m., Officer David Randall Odell a drug agent with the Major Crimes Unit with the Clarksville Police Department, observed the defendant exiting a pair of adjacent driveways near a MAACO that had been the object of several recent burglaries.  The MAACO's driveway was adjacent to the Travel Inn motel.  Officer Odell was

unable to determine whether the defendant was exiting the motel driveway or the MAACO driveway. He followed the defendant in his unmarked vehicle until she entered the left turn lane designated for on-coming traffic and failed to use her left-turn signal before turning into a mobile home park. At this point, he activated his blue lights and pulled her over.

Upon approaching the vehicle, he asked the defendant for her driver's license. She complied with the request. Officer Odell told her he was going to check the validity of her license and see if she had any outstanding warrants. He told her that if she did not have any outstanding warrants that he was going to give her a verbal warning and let her go. Her license was valid, and she did not have any outstanding warrants. It took about five minutes for Officer Odell to find out this information. However, upon running the license plate on her vehicle, Officer Odell discovered that the license plates did not match the vehicle. Officer Odell called for back-up.

Officer Odell asked the defendant about the discrepancy. She told him that she had borrowed the vehicle from a friend. He then ran the vehicle identification number. While waiting for the results of this search, Officer Odell asked the defendant for permission to search both her person and the vehicle. She consented to both searches. These searches took about ten minutes to complete. Officer Odell found a marijuana seed and flake on the driver's floorboard. The amount was too small to even field test without using up the entire portion. He later received a lab report that conclusively showed the substance was marijuana.

After he found the marijuana, Officer Odell asked the defendant where she was going. She stated that she was staying at the Travel Inn, but lived in a trailer at the mobile home park and was going to retrieve her mobile phone charger. She and her boyfriend were staying at the motel, because there were a lot of people at her trailer. Officer Odell then asked if he could search her room at the Travel Inn, which was about a quarter of a mile away. The defendant consented to this search. Officer Odell then returned her license to her. The defendant got into her car and drove to the Travel Inn. Officer Odell got in his car and followed her. At this time, about twenty to twenty-five minutes had elapsed since the initial stop of the defendant.

Officer Odell received the results of the search concerning the vehicle identification number when they were pulling into the parking lot of the motel. There was no indication that the vehicle had been stolen. At some point during the stop, Officer Odell told the defendant that he was not going to charge her for the marijuana he found in the vehicle.

The defendant opened the motel door using her metal key. There was a gentleman in the room, John David Scott. Officer Odell identified himself and explained why he was there. Mr. Scott immediately told Officer Odell that he had a marijuana cigar and handed it to the officer. Officer Odell then asked Mr. Scott if he could search him. Mr. Scott gave his consent. Officer Odell then asked if there were any weapons or other drugs in the room. The defendant and Mr. Scott both replied in the negative.

Officer Odell then advised the defendant and Mr. Scott of their rights and told them that he was going to continue to search the motel room. While searching the motel room, Officer Odell opened the top drawer of the night stand and found a small, white tube. He shook the container and it made a rattling sound. When he opened the tube, he found approximately eight rocks of what appeared to be crack cocaine. The lab reports eventually confirmed Officer Odell's suspicions. He then arrested both the defendant and Mr. Scott.

The defendant filed a motion to suppress. The trial court heard argument on May 9 and 20, 2002 on this motion. After hearing testimony and argument, the trial court denied the defendant's motion to suppress. The defendant then pled guilty to one count of possession of cocaine greater than .5 grams on June 6, 2002. On July 9, 2002, the trial court sentenced her to eight years suspended to run concurrently with her probation violation sentence.

The defendant reserved a certified question pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure. The reserved question is: whether the consent given to search the defendant's motel room is consistent with the requirements of the United States Constitution and the Constitution of Tennessee. Specifically the defendant raises the following four questions: (1) Whether the trial court was correct that the consent was voluntarily given as that requirement exists under both constitutions; (2) whether the police have any requirement to discuss the voluntariness of consent, and specifically the right to refuse; (3) whether there are any limitations on the ability of the police to seek a consent search under circumstances where any other exception to the search requirement do not exist; and (4) under the facts of this case whether the request to search a motel room at another location as a result of a traffic stop which resulted in the issuance of no charges or citations, was a violation of the defendant's constitutional rights. Although these questions are posited as discrete propositions, the real issue is the validity of the defendant's consent to the search of her motel room. The other questions simply refer to the factual situation in which the defendant found herself and whether that situation resulted in an invalid consent to search her motel room.

## Standard of Review

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Walton, 41 S.W.3d 775, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

## The Trial Court's Findings of Fact

On the suppression issue the trial court found as follows:

I believe the law in this State, at least at the current time, is whether or not a stop is pretextual is immaterial.

This officer observed Ms. Cox violate a minor traffic law - and she did violate that according to the evidence - and he stopped her. She was detained and, really, would have no doubt gone - - if she had said no, you can't search my car she would have been gone in no more than ten minutes.

But she agreed to the search of the car. Nobody put any pressure on here [sic]. According to the testimony of - - we have heard nobody said at that point you've got to agree to this. And no one had told her that she had to agree to the - - follow back to the motel room.

Now the testimony was very, very clear from the officer that she agreed to the search of the motel room back at the initial stop. Basically, sure go ahead. And she wasn't detained from that point. She got into this other car and went with - - drove the car to the motel and, basically, opened the door for the officer and said come on in and you can search, as she had already said.

So, I think it's was [sic] very important that she was not being detained there to go search the motel room. She agreed to it. And, again, that's what the law is in this state is whether she agrees to it voluntarily, and she certainly did.

And, again, if she had said no to that, that would have been the end of that. There wasn't any reasonable suspicion, any activity either for the car or for the motel room. But when you consent you take that out of the ram [sic] of the consideration for the Court.

I think under all the circumstances her consent was voluntary; it was intelligently made. . . .

. . . .

So, it's my finding that the law in the State of Tennessee does not require that there be reasonable and articulable suspicion of criminal wrongdoing before you can request a consent to search.


## The Initial Stop

It has long been established in both the state and federal constitutions, that an officer must have a reasonable suspicion to conduct an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 21; 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) Griffin v.. State, 604 S.W.2d 40, 42 (Tenn. 1980). This means that Officer Odell must have had a reasonable suspicion supported by specific and articulable facts that the defendant had committed or was about to commit a crime. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). However, the question of the validity of the initial stop of the defendant for failing to use her turn signal was not litigated in the trial court. Apparently, the defendant agrees that

Officer Odell could legally stop her for failing to signal for her turn into the trailer park.[1]  The validity of the initial stop is therefore not before this Court.


## Validity of Consent to Search Motel Room

The Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution protect individuals from unreasonable search and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable.  State v. Coulter, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001).  This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.  Binette, 33 S.W.3d at 218.  One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. Schneckloth v. Bustamonte, 412 U.S. 218, 248, 90 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).  The consent must however, be "'unequivocal, specific, intelligently given and uncontaminated by duress or coercion.'" State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992).

In determining the validity of a consent to search, courts must look at the totality of the circumstances surrounding the obtaining of consent.  United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 2113, 153 L. Ed. 2d 242 (2002).[2]  Although informing an individual of his or her right to refuse consent is not an absolute prerequisite to the validity of a consent to search, it is one circumstance or factor to which courts look in determining the validity of a consent to search.  Id. Other factors include the consenting individual's age, intelligence, education, the length and nature of the detention and whether the police conduct was coercive or punishing.  United States v. Page, 154 F. Supp. 2d 1320, 1328 (M.D. Tenn. 2001).

As noted previously, approximately twenty to twenty-five minutes elapsed from the initial stop of the defendant until she and Officer Odell appeared at the door of the motel room.  The defendant's consent to search the room was obtained at the site of the traffic stop some few minutes earlier.  The defendant was never informed that she could refuse consent to search her vehicle or the motel room, but neither was she told that she must consent.  Nothing in the record indicates the education level or intellectual capacity of this twenty-year-old woman.  There is no indication that

---

[1]Although not proven in this case, this court has found in another case similar to the one *sub judice*, that the City of Clarksville has a city ordinance No. 9-401 which requires drivers to signal *anytime* they attempt a turn.  See e.g., State v. Christopher Demotto Linsey, No. M2002-01299-CCA-R3-CD, 2004 WL _____(Tenn. Crim. App. at Nashville, Feb. 3, 2004).  Compare, Tennessee Code Annotated section 55-8-142(a) requiring such signaling only when other traffic might be affected.

[2]The defendant asks the Court to establish a *per se* rule that makes informing an individual of his or her right to refuse consent the *sine qua non* of a valid consent.  Despite what we may think of the wisdom of such a rule, our state supreme court has never suggested this and the Untied States Supreme Court in Drayton rejected this notion less than two years ago.  If such a *per se* rule is to be adopted as a matter of state constitutional law under Article I, § 7 of the Tennessee Constitution our state supreme court is a more appropriate forum for doing so.

the police officers were coercive or abusive. Had the license plates on the vehicle been in order, the record establishes that the defendant would have been warned about failing to use her turn signal and could have left. Even after the problem with the license plates was discovered had the defendant not consented to the search of her car she would have been free to leave once the discrepancy was cleared up. However, the discovery of the minute amount of marijuana gave Odell cause the detain the defendant a bit longer. Basically, at each stage in the progression of events at this traffic stop, Odell was able to establish cause to detain the defendant beyond what might otherwise have been a brief warning stop. Under these circumstances we cannot say that the length of the defendant's detention was unreasonable. Officer Odell's real motives may very well have been to detain the defendant long enough to obtain consent to search the motel room, and he may have had no intent to cite her or arrest her for these minor infractions, but as long as he could legally do so that subjective motive and intent is irrelevant under the law as it stands today in this country and this state. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct 1769, 135 L. Ed. 2d 89 (1966); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997); State v. McCrary, 45 S.W.3d 36, 43-44 (Tenn. Crim. App. 2000). Thus, it appears that the defendant's consent to search her motel room was obtained during a period of lawful detention following a lawful traffic stop.

Finally, the defendant argues that the consent to search a motel room obtained at a traffic stop is invalid simply because the motel was in a location away from the scene of the vehicle stop and there was no reason to believe anything was amiss in the defendant's room. However, there is no such requirement that police have some articulable suspicion that criminal activity is afoot in a place to be searched if a person with the authority to consent to a search validly does so. State v. Waylon D. Knott, M2000-02524-CCA-R3-CD, 2001 WL 846031, (Tenn. Crim. App. at Nashville, July 27, 2001).[3] The fact that the consent to search is given at a remote location from the site of the search is irrelevant.

## Conclusion

In light of the foregoing, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE

---

[3]The defendant cites Knott for the proposition that under circumstances such as that presented in the instant case a police officer must have an additional basis to search even where a person has consented. However, as noted by the State, Knott involved a consent given during an illegal detention, a situation not presented here.